IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *   Case No.: 19-cr-284-PWG |
| PETER ANDREW MORRISON | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses Peter Andrew Morrison's Motion for compassionate release based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A). ECF No. 37. Mr. Morrison has less than three months left to serve on an 18-month sentence, followed by two years of supervised release, for a one count reentry of alien removed after felony conviction. He is currently being held at the Northern Neck Regional Jail in Virginia. Mr. Morrison is at risk of prostate cancer and is not receiving treatment. If released, Mr. Morrison will be transferred to U.S. Immigration and Customs Enforcement ("ICE") or U.S. Customs and Border Protection ("CBP") custody and then be deported to Jamaica. The Government does not oppose release. ECF No. 42. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons described below, Mr. Morrison's motion is granted.

## Background

Mr. Morrison filed his motion in the midst of the global COVID-19 pandemic. The judges of this court have written extensively about the pandemic. *See, e.g.*, *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020); *United States v. Carden*, JKB-15-0016, 2020 WL 1873951, at *1 (D. Md. Apr. 15, 2020); *United States v. Decator*, CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020); *United States v. Bobbie*

*Johnson*, RDB-14-0441, 2020 WL 1663360 (D. Md. Apr. 3, 2020).  Repeating a full description of its unprecedented nature and impact is not necessary here.  As Judge Blake summarized, "[t]he world is now in the grip of a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).  In short, the pandemic has created novel circumstances under which incarcerated individuals experience more difficulty taking necessary health precautions, such as frequent hand washing and practicing social distancing, and those with certain risk factors are more susceptible to severe illness from COVID-19.  *Johnson*, 2020 WL 1663360 at *1.

Mr. Morrison was indicted on June 11, 2019 with one count of reentry of alien removed after felony conviction, in violation of 8 U.S.C. §§ 1326(a) and (b)(1) and pled guilty on October 9, 2019.  ECF Nos. 12, 24.  On February 13, 2020, the Court sentenced Mr. Morrison to 18 months of imprisonment to be followed by two years of supervised release, crediting him for time served since May 28, 2019.  Judgment, ECF No. 33.  Defendant's counsel proffers, and the Government does not dispute, that Mr. Morrison has an estimated release date of September 4, 2020.  ECF No. 37 at 2.  Mr. Morrison has yet to be designated to a Bureau of Prison ("BOP") Facility.  He was first detained at the Correctional Treatment Facility in Washington, D.C. from May 219 until approximately February 2020, when he was transferred to Northern Neck Regional Jail in Warsaw, Virginia.  ECF No. 37 at 3.

Since at least 2017, Mr. Morrison has received medical care for potential prostate cancer.  *See* Medical Records, ECF No. 37-1.  His medical records indicate a Prostate-Specific Antigen (PSA) level of 11.2 nb/mL, which places him at risk of prostate cancer.  *Id.*  By comparison, prostate biopsies are recommended for men with PSA levels above 4.0 ng/mL.  *See* National Cancer Institute, *Prostate-Specific Antigen (PSA) Test*,

https://www.cancer.gov/types/prostate/psa-fact-sheet#what-is-the-psa-test. Mr. Morrison's counsel states that he is already at a higher risk for prostate cancer as a African American male whose father recently died of prostate cancer. ECF No. 37 at 2. Mr. Morrison has not begun treatment for his prostate condition. Counsel proffers that this condition has compromised Mr. Morrison's physical health, places him at a higher risk of complications if he were to contract COVID-19, and that even if he were to begin treatments with immunosuppressant's while in custody that too would place him at higher risk if he contracted COVID-19. *Id.* at 2–3.

Mr. Morrison filed a request for reduction in sentence on April 27, 2020 with the superintendent of the Northern Neck Regional Jail. *See* ECF No. 37-2. The superintendent informed Mr. Morrison that his request was beyond his authority to grant. *Id.* Mr. Morrison filed an appeal. *Id.* Counsel for Mr. Morrison also states that he sent Mr. Morrison's request for compassionate release to BOP Regional Deputy Counsel Diana L. Lee who responded that since Mr. Morrison was not in BOP custody they could not consider him for a reduction in sentence. Mr. Morrison's then filed his motion for compassionate release with this Court. ECF No. 37. The Government does not oppose Mr. Morrison's motion, but "defers to the Court" whether Mr. Morrison's sentence should be reduced. ECF No. 42. If Mr. Morrison is released, the government requests that he undergo a period of 14 days in quarantine prior to release. *Id.*

## Discussion

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here Defendant requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.

Congress originally enacted the First Step Act in 1984. *See* Pub. L. No. 98-473, 98 Stat. 2030 (1984). The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the BOP. However, the BOP rarely used this authority. Accordingly, in 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant. As revised, 18 U.S.C. § 3582(c)(1)(A) states as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Mr. Morrison requests release based on "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Therefore, under the statute, I must do the following: (1) determine whether Mr. Morrison has fully exhausted all administrative remedies or 30 days have passed since the BOP received Mr. Morrison's request to bring a motion for release on his behalf; (2) determine whether "extraordinary and compelling reasons" warrant a

sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." In regards to the second step of this framework, I join with the majority of courts that find that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7–9 (D. Md. May 22, 2020) (holding the same and collecting cases). While not binding, the Sentencing Commission's policy statements may provide useful guidance.

1. **Administrative Exhaustion**

First, I must determine whether Mr. Morrison's motion is ripe for review. 18 U.S.C. § 3582(c)(1)(A). I may only consider Mr. Morrison's motion if he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or 30 days have passed since warden of defendant's facility received such a request. Judges of this court have held that it has no power to hear a motion for compassionate release if the Defendant has not exhausted his administrative remedies. *See Johnson*, 2020 WL 1663360 at *3; *United States v. King*, DKC-16-0484, 2020 WL 1505900, at *1 (D. Md. Mar. 30, 2020) (vacating court's previous orders to transfer Defendants to home confinement because they had not fully exhausted their administrative remedies); *Decator*, 2020 WL 1676219 at *1; *United States v. Underwood*, TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020); *United States v. Bryant*, CCB-95-202-3, 2020 WL 2085471, at *1 (D. Md. Apr. 30, 2020); *United States v. Maycock*, GLR-14-0133, 2020 WL 2395620, at *2 (D. Md. May 12, 2020); *United States v. Barringer*, PJM-13-0129, 2020 WL 2557035, at *2–3 (D. Md. May 19, 2020)

(holding exhaustion requirement satisfied because the inmate was sentenced but not yet transferred to BOP facility); *Williams*, 2020 WL 3073320, at *3 (D. Md. June 10, 2020) (same); *United States v. Brown*, CV ELH-17-475, 2020 WL 3034838, at *3 (D. Md. June 5, 2020).

The Government concedes that administrative exhaustion is satisfied in this case because there is no BOP Warden to whom Mr. Morrison may send a petition, and recognizes these circumstances are parallel to those in *Barringer*, 2020 WL 2557035, at *2–3. I agree, and find that the administrative exhaustion requirement is satisfied.

### 2. Extraordinary and Compelling Reasons and Sentencing Commission Policy Statements

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). The applicable Sentencing Commission policy statements are found in U.S.S.G. § 1B1.13, which recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The commentary to U.S.S.G. § 1B1.13 provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C). As noted above, I join with the majority of courts that find that the Sentencing Commission's policy statements constitute helpful guidance, but that I must make an independent determination whether extraordinary and compelling reasons warrant a sentence reduction. *See Wise*, 2020 WL 2614816 at *7-9.

Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that

placed them at high risk for complications if they contracted COVID-19. *See United States v. Gutman*, RDB-19-069, ECF No. 82 at 3-4 (D. Md. May 13, 2020) (finding extraordinary and compelling reasons based on COVID-19 present at FCI Cumberland and high risk underlying medical conditions including multiple sclerosis for which Defendant takes an immunosuppressant and hypertension); *United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *8 (D. Md. May 22, 2020) (finding extraordinary and compelling reasons based in part on presence of COVID-19 at FCI Allenwood Defendant's facility and finding that Defendant "suffers from *all* of the maladies identified by the CDC as conditions that increase the risk of dire complications due to COVID-19" including being nearly 60 years old, having a kidney removed in 2018 and suffering a heart attack in 2019); *United States v. Riley*, ELH-16-0402, 2020 WL 3034843, at *6–7 (D. Md. June 4, 2020) (finding Defendant's cardiomegaly, or enlarged heart, qualified as an extraordinary compelling reason); *see also United States v. Wright*, TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (finding that, had there been any cases of COVID-19 in Defendant's facility, Defendant's age, obesity, diabetes, and hypertension would have satisfied an extraordinary and compelling reason); *United States v. Staten*, PJM 01-284-4, 2020 WL 3051045, at *4–5 (D. Md. June 8, 2020) (finding Defendant's asymptomatic COVID-19 status and obesity were important but outweighed by the severity of the underlying offense and Defendant's persistent criminal history). This case is particularly analogous to *United States v. Mel*, where the Defendant requested only a short reduction in sentence and was granted compassionate release to receive medical treatment for potential cancer in her home country of Israel. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020).

Here Mr. Morrison argues that extraordinary and compelling reasons exist given the nature of the COVID-19 pandemic and that he is at high risk for complications given his

potential prostate cancer. ECF No. 37 at 14. Further, Mr. Morrison argues that he is not a danger to the community and if released will be transferred to ICE or CBP custody and then deported to Jamaica. *Id.* at 15–6. I agree. The CDC has advised that individuals who have serious underlying medical conditions might be at higher risk of severe illness from COVD-19. *See* CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Likewise, the American Cancer Society has advised that cancer patients are at high risk of serious illness because of their weakened immune systems. *See* American Cancer Society, *Why People with Cancer are More Likely to Get Infections*, https://www.cancer.org/treatment/treatments-and-side-effects/physical-side-effects/low-blood-counts/infections/why-people-with-cancer-are-at-risk.html. Mr. Morrison's borderline prostate cancer puts him in this category of individuals at high risk of complications. In addition, regarding the Sentencing Commission Policy Statements, and as discussed more fully below, I find that Mr. Morrison is not a danger to the community as he is a nonviolent offender who will be released to ICE or CBP custody after release and deported to Jamaica.

The Government does not concede that Mr. Morrison has met his burden of establishing extraordinary and compelling circumstances. ECF No. 42 at 2. It points out that although Mr. Morrison has elevated PSA levels which could be a sign of prostate cancer, he has not received a formal diagnosis. *Id.* And the Government states that it believes it is cancer treatment, and not cancer itself, that places individuals at a heightened risk of complications from an immunocompromised state. The American Cancer Society takes a different view. *See* American Cancer Society, *Why People with Cancer are More Likely to Get Infections*, *supra* ("People with cancer might be more likely to get infections because of: The cancer itself[.] Certain types of

cancer treatment[.] Poor nutrition[.] Other health problems or medications that aren't related to cancer[.]") Nonetheless, the Government recognizes that Mr. Morrison is not receiving meaningful medical treatment for his potential prostate cancer and is unlikely to do so while in custody in the United States and therefore defers to the Court's judgment. Given that Mr. Morrison has a serious medical issue that is being left untreated in the midst of the COVID-19 pandemic, and because he is an offender that is not a danger to the community, Mr. Morrison has demonstrated "extraordinary and compelling reasons" for a sentence modification.

3. **Sentencing Factors in 18 U.S.C. § 3553(a)**

Next, I must consider the sentencing factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides that "[t]he court shall impose a sentence that is sufficient, but not greater than necessary," to comply with the following purposes: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). In making that determination, I must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

Here, Mr. Morrison plead guilty to one count of reentry of alien removed after felony conviction. Plea Agreement, ECF No. 24; Judgment, ECF No. 33. Mr. Morrison's prior convictions are nonviolent convictions related to drug offenses involving marijuana and previous instances of unlawfully reentering the United States. *See* Plea Agreement. Mr. Morrison was sentenced to 18 months incarceration, which is three times longer than any previous period of

9

incarceration.  *See id.*; Judgment.  He has served over 75% of his sentence and has an expected release date of September 4, 2020.  Mr. Morrison says that this period of incarceration has been a powerful deterrent for him as it has prevented him from providing financial and emotional support to his family, including following the death of his father from prostate cancer in November 2019.  ECF No. 37 at 16.  Upon release, Mr. Morrison would be transferred to ICE or CBP custody and be deported to Jamaica.  The foregoing demonstrates that reducing Mr. Morrison's sentence to time served plus two years of supervised release would amount to a sentence that is "sufficient, but not greater than necessary" to provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed medical care, satisfying the sentencing factors under 18 U.S.C. § 3553(a).

## Conclusion

Mr. Morrison's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), ECF No. 37, is granted. I find extraordinary and compelling reasons for release based on Mr. Morrison's untreated medical condition of potential prostate cancer in the midst of the COVID-19 pandemic and that he is not a danger to the community.  He has also satisfied the administrative exhaustion requirements for compassionate release and the sentencing factors under 18 U.S.C. § 3553(a) weigh in favor of release.  Mr. Morrison's sentence is reduced to time served.  The previously ordered term of two years of supervised release remains in effect.  The Government requests that Mr. Morrison undergo 14 days of quarantine prior to release.  I find that this suggestions is reasonable to promote the health and safety of Mr. Morrison and state and federal officials as he is transferred from the Northern Neck Regional jail to ICE or CBP custody.  An Order will issue separately.

Date: June 24, 2020                                           /S/
                                                                    Paul W. Grimm
                                                                    United States District Judge